May it please the court, my name is Thomas Spagnolo and I'm the attorney for the petitioner Filisone Ma Afu. Actually his surname is Ma Afu. Oh, I'm sorry, Ma Afu. Sorry, wait. I just read the last three. Alright, go ahead. Your Honor, this case involves imputation of what we were arguing was imputing the petitioner's father's permanent residency to the petitioner. Just very quickly reviewing the facts, the petitioner is from Tonga. Is there any case in which we have imputed a parent's legal status, not just the underlying requirements for the legal status? I'm not aware of one, so. I'm not certain I understand your question, Your Honor. Well, you're asking that you're asked to impute the parent's legal status. And there are cases that impute the underlying requirements for that legal status. And I'm not aware of any case that goes where you're asking us to go. That's correct, Your Honor. Okay. I agree with you. There is no case law exactly that. What you're really drawing is you're drawing imputation case law, at least as you've from other places where LPR status has been imputed. Yes, exactly, Your Honor. And they're not really in this. It isn't really in a citizenship case, correct? That's correct. This is, to my knowledge, there are no other cases where the issue is imputation of residency that directly affects citizenship. They had to do with eligibility for relief from deportation, either 212C or cancellation or removal. So in that situation, why is the BIA wrong? I mean, we've got a lot of cases which would suggest that we don't see relief the same as we see citizenship. That's right, Your Honor. But I believe that the underlying principles of Cuevas, Gaspar, and Lepig. The underlying principles translated from one area, which has to do with imputing LPR status in those particular matters, to citizenship is quite a different leap. I mean, you can make the argument, but it's quite a different leap. I agree with that, Your Honor. Well, and it would completely eliminate the requirement that a child have LPR status, right, if we accept your argument. Well, according to Section 320 of the new Section 320, after the Child Citizenship Act was enacted in February of 2001, in order to, what I was arguing was the imputation of his father's residency so that he could meet that requirement. He had applied for permanent residence previously, before the enactment of the Child Citizenship Act. That application was still pending at the time that the Child Citizenship Act went into effect. But it seems to me if we accept your argument, there would never, that in every case where a child has a citizen parent, they would then be an automatic citizen. An automatic LPR, wouldn't you say? I'm just trying to say, what are you really saying? Are you saying it's an automatic citizen or an automatic LPR? Well, our, under, after the, let me try and answer it. The requirements under Section 320, INA Section 320, are that he have a citizen parent, that he be in the legal custody of that citizen parent, that he be under the age of 18, and that he be a permanent resident of the United States. No, it's the child is residing in the United States in the legal and physical custody of a citizen parent, pursuant to a lawful admission for permanent residence. Right. And that's the LPR. That's what's missing here, right? That's right, exactly right. That's right. The only way that you can win is if you do go, if you're able to persuade us that Judge Smith is right and that you get automatic LPR status by, without ever applying for it, without it having been issued, once you have a parent who's been admitted. But he did apply for it. And he did. And it was pending. Well, and he didn't, and it wasn't approved before he was 18. It was not approved because there was a problem with his fingerprints, because he was a child, because he was not able to take care of this matter himself. And that's exactly the issue that was involved in the other cases that we have argued. Well, when did he apply for the LPR? What date? He applied for LPR status, Your Honor, in June 25, 1998. He was 13 years old at the time. Denied. And it was denied in 2002, four years later. And the reason it was denied was he had to apply again. He did have to apply again. And he did. When did he apply again? In 2005, Your Honor. On March 18? Yes, Your Honor. What was the date of the crime? The date of the crime was shortly thereafter. I don't know the exact date. Wait a minute. The conviction was shortly thereafter. Yes. April the 8th. Yes. Well, when was the date of the crime? Well, there were several crimes, Your Honor. I'm not sure. I don't know. He was convicted on April 8, 2005. Right. Of a crime that must have occurred sometime. But that was clearly pending. Clearly. I mean, it was the conviction came after his LPR status was granted. Do I owe any Chevron or Skidmore deference to this decision by the BIA? I think I would argue, Your Honor, Skidmore deference. I do owe Skidmore? I believe so, Your Honor. Do you think then there's reasonable justification for what they said? I believe that in the BIA opinion, Your Honor, first of all, it was a single-judge panel. It was unpublished, and it was non-precedential. So I believe. I agree with that. And I believe that the BIA panel member failed to discuss the possibilities or the. . . It seems to me that you're suggesting, if I owe it that, that it had adequate discussion. Right. I'm saying that I don't believe that it did. I thought you just said, I did have to accord it Skidmore deference. I thought that's just. . . Well, and then my response, Your Honor, is that her opinion was not. . . Well, your response was, accord it Skidmore deference. So then I questioned you a little more. You're still with accord it Skidmore deference? Actually not, Your Honor. Oh, I was kind of surprised by your. . . Actually not, Your Honor. Okay. Do you want to reserve any time for rebuttal? Maybe a minute or two, Your Honor. Okay. You're down to a minute and a half. Thank you. Thank you. Mr. O'Connor, on behalf of the Attorney General. Your Honors, as both this Court and the Supreme Court have held, Congress alone has the exclusive authority to establish rules for naturalization. The power to make someone a citizen can only be performed in strict compliance with the terms set forth by Congress in the I.N.A. The statutory provision under which this Petitioner is asserting citizenship explicitly states that a child. . . State U.S.C. 1431? Yes, Your Honor. Now, what about, look at Part 3. We've got at least one parent is a citizen. That's met. Two, the child is under the age of 18. That's met. Three, the child is residing pursuant to a lawful admission for permanent residence. How long does the L.P.R. Does he have to be under L.P.R. status? Well, the critical thing is that. . . One day enough? The critical thing is that that must occur while he's still under the age of 18. And that's what this alien fails to establish in this case. And if you look at the explicit plain language of the statute, the requirement is that, and I quote, the child is residing in the U.S. pursuant to a lawful admission for permanent residence. The plain language of the statute does not allow for that L.P.R. status to be imputed by another relative. So if. . . Why? Why not? Because the statute states that it must be the child who is residing pursuant to a lawful. . . It doesn't say that a child's parent. Well, it doesn't say, but if a child can be imputed the L.P.R. status, the child has the status. I agree, Your Honor, but we're arguing that it cannot be imputed under the plain language of this statute. And under. . . Let me change this just a little bit on you. Because this is a very serious question to me, and it isn't something that counsel has raised. If. . . Under Cauchembeholder in our circuit, we can infer or impute the abandonment of L.P.R. status to children from their parents, which would deny them citizenship. If we can impute the abandonment of L.P.R. status to deny them citizenship, what would be the rational basis for not allowing us to impute L.P.R. citizenship to grant them citizenship or L.P.R.  I would say this, Your Honor. Abandonment, the term abandonment, is similar to the term domicile in this Court's  And children who's a minor, it's very difficult for them to be able to have those levels of intent. Now, whether or not someone simply has been conferred the status of L.P.R. by the government involves no intent whatsoever. It's simply whether or not they made the application and the government granted it. Intent doesn't figure into that in any way, shape, or form. That has been the basis for the Fifth and Third Circuit's decisions in not agreeing with this Court's imputation rule in the cancellation context, which is currently before the Supreme Court. And that's how my answer to that would be, Your Honor. I mean, whether or not this person was granted L.P.R. status by an application made by him and whether the government granted that is simply an act. He doesn't make any application on his own. Sure he does. He applied himself in 1998. He made the application. He applies because his parent applies for him. It's an application personally in his name, Your Honor. I mean, the parent may help him thaw it out, but still. A parent applies. A parent files it for him. Sure, Your Honor. And in this instance, the parent is filing it for him, and therefore, we will give him L.P.R. status because the parent files for him. And then when we're going to get him out of having citizenship, we're going to say that we can take the parent's intent or what the parents do and apply it to him so that he abandons his right to citizenship, and yet you now want to argue that I shouldn't give the parent's L.P.R. status to him in this particular instance to give him citizenship. Okay. It seems contradictory if I write an opinion to try to back you up. That's why I said, what are you going to use as my basis? I would go back to the intent point, Your Honor, and also that in the abandonment, there the child is more of a derivative of the parent in making that determination. But this is derivative of the parent. Well, if we accept the appellant's position, then it would completely eliminate the requirement that a child have L.P.R. status, correct? I would agree, Your Honor. I would agree. And so if I were to understand your argument that you're saying that this statute requires it and that Congress decides what's required and that that's that, and even though the argument might be, I don't think, you know, that's not the best way to do it, what you're telling us as judges, we don't get to decide what's the best way to do it or the way that we want to do it, that we've got to go with what Congress said. And here that goes back to the purpose of the statute. Can the L.P.R. application be made when the child is 17 years and 11 months and 20 days of age? As long as it's approved before he turns 18, yes, Your Honor, then he would qualify. Totally pro forma, because if he applies for it 5, 10, 12 days later, after he's 18 years and 2 days old, then it isn't no longer going to be granted automatically. Sure, Your Honor. But that's why Congress wrote the statute. I didn't write the statute. I mean the purpose. But what's the purpose? Why that pro forma glitch is what I'm trying to find out. What's the purpose that's being accomplished here? Congress's wisdom has made 18 this magic age, and it's not only in this context. It's not only in this context.  It's not only the age of 18, but the age of 18 appears in other contexts as well. And those are the requirements that the L.A. I don't know if you're an adult when you commit a crime. Yes, Your Honor. I mean, and then they make exceptions and then they do. I mean, that's why children are. But the import of the question needs to have the government's response. Yes, Your Honor. Because the bottom line is, Congress says it is good, but we've got a lot of things in this code where we say, well, Congress said it, but like 212C. I mean, we can come to a lot of times where we just say, well, it looks good, but it doesn't seem fair. Yes, Your Honor. And so that's why I'm having you come to the point about this argument. We've got to have the government's response. Because if we write an opinion, it has to be an opinion. Okay. Or maybe it's a mem dispo. I don't know. But if it's an opinion, I've got to have a basis to go where you go without just saying, Congress says it, because there's going to be people who are going to be looking over my back who are going to say, what's the basis for that? Well, let me ask you this. And this is because I've got, if we put it another way, if we accept a parent's position, would there ever be a case in which the child of a citizen parent would not be entitled to automatic citizenship? Probably not. I can't think of any, Your Honor. Because, again, obviously the parent would have been an LPR before becoming a citizen. So if we eliminate the child having to have LPR status, then every child that has a citizen parent would be an automatic citizen. I would say that's probably correct, Your Honor. But the only consequence of your answer to Judge Callahan is that if you apply within ten days of the 18th year, or even two days, it's going to be automatic. But if you apply three days later, it's going to be gotcha. It must be adjudicated before the 18th birthday. It must be approved. But, you know, there's cutout dates for all kinds of relief. And those cutout dates have been upheld. I mean, you always have to have a cutout date. So it's really a gotcha provision, isn't it? Yes, Your Honor. But there's lots of gotcha provisions all throughout the U.S. Code. But the answer is yes. Yes, Your Honor. It's a gotcha provision. Yes, Your Honor. Is this a case for mediation? No, Your Honor. He has a first-degree burglary offense. First-degree burglary offense? I mean, I haven't looked really into the first-degree burglary offense. But it's a burglary of a residence, correct? Yes, Your Honor. It was four college students. Him and a couple of his associates went in with guns and were going to rob them. That's a very serious offense, Your Honor. It's not a case of prosecutorial discretion. One other point I would like to make is that if the Court were inclined to accept my opponent's position, you know, we argue that there's good reasons for the board has laid them out as to why imputation does not apply in the citizenship context, given this Court's and the Supreme Court's case law. But if we were inclined to go down that road, we'd ask that they hold this case in abeyance for a decision from the Supreme Court in Gutierrez and Sawyers, which deals with the imputation issue in the cancellation context. So we think that would obviously have a determination as to how this case is going to be treated. What's the status of that case? It's the merits of the case have been filed. It's being argued in January, Your Honor. There will be a decision before the end of the term. So it's already set? Yes, Your Honor. All right. Thank you. But, again, we would argue that there are good reasons for why imputation does not apply in the citizenship context. Is that going to be dispositive of this issue? I would say it would be, because if it doesn't apply in cancellation, I would say it clearly doesn't apply in the citizenship context as well. Counselor, I would say you can tell your boss thank you for sending such a knowledgeable counselor to help us with this case and the former case. Thank you very much, Your Honor. And I would say that we are struggling with these differences in these cases, because we need to have – I mean, as you can tell, we are struggling with these differences in these cases based on where we have gone, and we needed to have the government's position as to these kind of situations. Yes, Your Honor. I hope I have answered your questions adequately. Thank you. Thank you for your candor, too. Thank you. Do you have a minute and a half? The only thing I wanted to add was the fact that at the time that the Petitioner's father became a citizen and the Petitioner was eligible, the Petitioner's father failed to file an N-600 for him in 1998. The Petitioner would have automatically become a citizen, no interview, no history test, no nothing. All he had to do, the father had to do in 1998, after he got his citizenship, was file it for him. He didn't do it. So we're really visiting the sins of the father and the son. Exactly. This child, in two occasions, lost out because of neglect, because the previous attorney didn't push him to get the fingerprints taken. His father failed to file the N-600. Does it matter before the Supreme Court, will that be dispositive of this? I would imagine, Your Honor, it probably would be. But I think that the thing that is so apparent to me is that children have no rights under the immigration system, under this code. They can't file these applications for themselves. The N-600 could only be filed by the father, not by the Petitioner or the derivative party. I think this is a situation where children simply have no rights. But in this situation, neither the father's citizen nor the mother, LPR, filed, correct? That's correct, Your Honor. Thank you. Thank you. This matter will stand submitted.
judges: Lucero, Callahan, Smith